

January 24, 2020

Jacquelyn K White, MD, FACEP
The Health Hut
310 West Mississippi Ave.
Ruston, LA 71270

Re: Review of Treatment provided to patient A.H. in Henderson v. Willis-Knighton Medical Center

    I was asked to review medical records on treatment provided to the minor patient referred to as A.H. for an emergency room visit on February 10, 2018. Based on my review of the records provided to me it is my opinion that the patient was stable when discharged from the WK ER on February 10, 2018. I was provided with the following documents to review:

    a. WK South ER record for the treatment at issue on February 10, 2018;

    b. WK Bossier ER record for February 10, 2018;

    c. Copy of the complaint filed by plaintiffs; and

    d. Copy of complete WK South record on A.H.

    I, Jacquelyn K White, MD, FACEP, am considered an expert in the field of Emergency Medicine. I completed a residency in Emergency Medicine from University of Arkansas Medical Center from 1992-1995, and have practiced Emergency Medicine since then. I became board certified in Emergency Medicine in 1996, then a Fellow in the College of Emergency Physicians, and have maintained my Active Board status since then, renewing in 2006 and again in 2016. Completing more than 50 continuing education hours each year for the past 20 years, I have served on several review boards for hospitals and for independent consultants, including numerous review panels in Louisiana. I am currently working approximately 90 hours/month clinically in the ER and 60 hours/month on administrative duties.

    I have reviewed the medical records from the ER visit on 2/10/18 where patient Henderson presented to WK South with her mom. I have also reviewed all previous ER visits and admissions sent to me from WK starting on 4/21/14. According to the record, the patient presented to the ER on 1:54 am on 2/10/18 with difficulty breathing. The patient was seen, triaged, and evaluated for an Emergency Medical Condition shortly after arrival. There never appeared to be any lag in the initiation of treatment of the patient.

    After reviewing the treatment provided to the patient while in the ER, there does not appear to be any inappropriate or inadequate treatment given. The patient was appropriately triaged, assessed, and treated. Upon discharge, approximately 2 hours later, the patient's condition had

1

improved, and she was discharged to the care of her mother. In my opinion, the patient was stable for discharge. An appropriate medical screening exam was done by the physician, including testing for influenza, and ordering a chest X-ray. Stabilizing treatment was provided, including 2 nebulizer treatments, supplemental oxygen, a shot of dexamethasone, and an appropriate prescription of Prednisolone. WK ER staff appropriately assessed and then reassessed the patient during the ER visit.

Though the patient appeared to be in respiratory distress upon presentation, she reportedly improved during her ER visit. The nurse initially described the patient as distressed, uncomfortable, but ambulated without assistance. She also described her as in tripod position. Tripod position is when someone sits up and leans forward on outstretched arms to optimize the mechanics of respiration. Just because the nurse uses the word 'tripod' in no way equates to impending respiratory failure or requires automatic admission to the hospital. In the initial vital signs, taken at 2:05 a.m., the patient was tachycardic and tachypneic. On the second set of vital signs at 3:23 a.m., both the respiratory rate and pulse rate were improving, and her pulse ox was 99%. After her first breathing treatment, she was also able to be transported to Radiology for a 2 view chest x-ray – without supplemental oxygen. Both the nurse and the doctor documented reassessments of the patient. The doctor noted that on the reassessment just prior to discharge the "patient's symptoms have resolved after treatment. Patient's condition has returned to baseline." The patient was discharged to home in stable condition at 3:52 a.m.

The patient's history of asthma and home medications were well documented. After reviewing the patient's past ER visits and admissions (that were in the Willis-Knighton system), she had actually been to the ER many times. According to the records, the patient had thirty-seven (37) ER visits in 3 ½ years. Of those visits, all were related to cold/cough/fever except one (it was for a rash). The patient was admitted as an inpatient 7 times during that period. Four of those admissions were from the patient returning within 72 hours of an ER visit. On all of these admissions, the patient stayed no more than 2 days in the hospital, and never had to be intubated. She showed rapid improvement during each admission, without any complications noted. The patient was referred to a Pediatric Pulmonologist on her last inpatient admission (8/28/17) prior to the February 10, 2018 ER encounter in question. It appears that the patient was started on Dulera during that time. After that, the patient did have 4 ER visits, but there were no admissions in the 6 months prior to the visit on Feb 10, 2018.

According to the ER record, the patient was given the necessary treatment 'to assure within reasonable medical probability' that no material deterioration of her condition was likely to result. Of note, the patient was appropriately given a shot of dexamethasone approximately 15 minutes before discharge, but dexamethasone is not considered emergency treatment for asthma. It is often used in the ER, but dexamethasone does not start working in the body for several hours. It is given as part of the treatment for asthma exacerbation-knowing that it will go into effect later in the course. The last emergency treatment (an albuterol nebulizer treatment) was given approximately 40-45 minutes prior to discharge, and the patient had no record of

2

worsening symptoms while in the ER. The last assessment by the physician was that the patient's condition had returned to baseline.

In my opinion, there is no evidence in the chart that the patient had a delay in care at any time, or was unstable at discharge. It is my opinion that all of A.H.'s health care providers met the standard of care while treating her in the WK South ER.

Tragically, approximately 3 1/2 hours after the patient was discharged from the ER, she returned to a nearby ER in respiratory arrest. However, knowing the devastating outcome of the case doesn't change my opinion of the appropriate treatment given to her while she was in the WK South ER earlier.

In the last 4 years, I have testified as an expert at trial or by deposition in Kevin O'Neill vs Dr. Rahmanian (approx. 2016) and Catherine Brown vs Dr. Frederick (2016). Compensation to be paid for my expert services in this case are $350.00/hr for Review/Preparation and $500.00/hr for Deposition/Trial.

*[signature]*
Jacquelyn K White, MD, FACEP