Case 5:19-cv-00163-EEF-MLH   Document 28-3   Filed 03/02/20   Page 1 of 7 PageID #: 228
Akeem Henderson, et al. vs Willis-Knighton Medical Center
Richard M. Sobel, M.D.                                              November 26, 2019

```
 1              UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF LOUISIANA
 2                   SHREVEPORT DIVISION

 3

 4   AKEEM HENDERSON, et al.,

 5              Plaintiffs,             CASE NUMBER

 6        vs.                           5:19-CV-00163

 7   WILLIS-KNIGHTON MEDICAL CENTER
     d/b/a Willis-Knighton South
 8   Hospital,

 9              Defendant.
10   _____

11

12                   DEPOSITION OF

13             RICHARD M. SOBEL, M.D.

14

15               November 26, 2019

16                   10:02 a.m.

17

18

19

20           105 Tivoli Gardens Road

21         Peachtree City, Georgia 30269

22     Thomas R. Brezina, CRR, RMR, CCR-B-2035

23

24

25
```

Case 5:19-cv-00163-EEF-MLH   Document 28-3   Filed 03/02/20   Page 2 of 7 PageID #: 229
Akeem Henderson, et al. vs Willis-Knighton Medical Center
Richard M. Sobel, M.D.                                                November 26, 2019

Page 2

```
1                APPEARANCES OF COUNSEL

2    On behalf of the Plaintiffs:
     (present via speakerphone)
3
     SEDRIC E. BANKS, Esquire
4    S. HUTTON BANKS, Esquire
         1038 North Ninth
5        Monroe, Louisiana 71201
         Tel: (318) 388-1655
6        Fax: (318) 816-5026
         sedbanks@aol.com
7


8    On behalf of the Defendant:

9    LAMAR P. PUGH, Esquire
     Pugh, Pugh & Pugh
10       333 Texas Street
         Suite 2100
11       Shreveport, Louisiana 71101-5302
         Tel: (318) 227-2270
12       Fax: (318) 227-2273
         E-mail:  lamar@thepughlawfirm.com
13

14   ROBERT W. ROBISON, JR., Esquire
     Watson, Blanche, Wilson & Posner, LLP
15       505 North Boulevard
         Baton Rouge, Louisiana 70821
16       Tel: (225) 387-5511
         Fax: (225) 387-5972
17       E-mail:  Rrobison@wbwplaw.com

18

19

20

21

22

23

24

25
```

```
 1   instance?
 2        A      Yes.
 3        Q      And what is your opinion?
 4        A      There was.
 5        Q      And again, we're -- but that would be
 6   only to the first visit of February 10th?
 7        A      Yes.
 8        Q      In your opinion who was negligent in
 9   the treatment of the patient:  The doctor or the
10   hospital nurses?
11        A      Both.
12        Q      So it's your opinion that there was a
13   breach of the standard of care by both the treating
14   ER physician and hospital nurses in treating this
15   patient; is that right?
16        A      Yes.  And the respiratory therapy, if
17   they even were involved.  I haven't been able to
18   detect the presence of a respiratory therapist yet,
19   but I haven't excluded the possibility that there
20   was one involved.
21        Q      And so it's also your opinion that the
22   respiratory therapist breached the standard of care
23   in the treatment of the patient in this case?
24        A      Well, that becomes likely because there
25   is no documentation, unless there is documentation
```

Case 5:19-cv-00163-EEF-MLH Document 28-3 Filed 03/02/20 Page 4 of 7 PageID #: 231
Akeem Henderson, et al. vs Willis-Knighton Medical Center
Richard M. Sobel, M.D.
November 26, 2019

Page 109

1  found on discovery.  I don't know if discovery is
2  complete.  But unless there is documentation of the
3  involvement of a respiratory therapist found, that
4  would be a breach of the standard of care.  You
5  can't really treat a patient as a respiratory
6  therapist in an emergency department without any
7  documentation.
8      Q      Do you remember what Mr. Banks told you
9  about the patient's treatment in this case?
10 Independent of your review of case, were you told
11 anything?
12     A      You mean what he told me as a thumbnail
13 sketch of the case --
14     Q      Yes, sir.
15     A      -- before he sent me the case?
16     Q      Yes, sir.
17     A      No.  I don't specifically recall.  I
18 would assume he told me it was a four-year-old that
19 had exacerbation of asthma, history of prematurity,
20 was discharged, and returned to the hospital in
21 cardiac arrest some three or four hours later.
22     Q      Did you actually meet with plaintiffs'
23 attorney, or just have telephone conversations?
24     A      Just telephone conversations.
25     Q      Have you ever spoken with this

Case 5:19-cv-00163-EEF-MLH   Document 28-3   Filed 03/02/20   Page 5 of 7 PageID #: 232
Akeem Henderson, et al. vs Willis-Knighton Medical Center
Richard M. Sobel, M.D.                                              November 26, 2019

Page 125

```
 1    that something you rely upon?
 2         A       Oh.  Well, I haven't seen any evidence
 3    of the use of any sort of monitor system in this
 4    case.  I certainly would like to review it if it
 5    exists.
 6         Q       Now, so I can understand that, you
 7    don't see where this patient was monitored in the
 8    hospital?
 9         A       No.  I see spot checks of the
10    respirations, pulse oximetry on two occasions.  I
11    don't have any rhythm strips at all, which actually,
12    I believe is a breach of the standard of care.  This
13    is a patient that should have been on a monitor with
14    continuous vital signs monitoring:  Respiratory
15    rate, pulse rate, and pulse oximetry.  That would be
16    the standard for a four-year-old presenting in
17    respiratory distress, all the way through their
18    transfer likely to another hospital.
19         Q       In your experience in reviewing records
20    do the hospitals typically include in the record,
21    the entire strip from such a monitoring system?  In
22    the medical records it stores?
23         A       The entire strip, no.  The standard of
24    care does not require them to preserve an entire
25    strip, so the standard would require them to
```

Case 5:19-cv-00163-EEF-MLH   Document 28-3   Filed 03/02/20   Page 6 of 7 PageID #: 233
Akeem Henderson, et al. vs Willis-Knighton Medical Center
Richard M. Sobel, M.D.                                        November 26, 2019

Page 126

1   preserve evidence of monitoring on an intermittent
2   basis.  Depending on the circumstance, it might be
3   every five minutes; it might be every 15 minutes,
4   whatever is appropriate.  But some evidence of
5   continuous monitoring, if they had provided it, is
6   the standard of care.
7           And to answer, I think, the second part
8   of your question, I've seen many cases where the
9   hospital did not properly retain evidence of
10  continuous monitoring or did not produce evidence of
11  monitoring right up until the weekend before trial
12  when it mysteriously appears and it's produced.  So
13  yes, that is a problem.
14      Q    In the ERs isn't it true that quite
15  often the patients are more closely monitored in an
16  emergency room setting than they are on the floor?
17      A    Yes.
18      Q    Back to the facts on the bottom of the
19  page 4, you stated in the last sentence, "She had
20  been seen on 12/6/17 at the WK South emergency
21  department for a milder exacerbation of bronchospasm
22  and discharge."
23      A    I think I had lost our place.
24      Q    Bottom of page 5.  I'm sorry.
25      A    Okay.

Case 5:19-cv-00163-EEF-MLH Document 28-3 Filed 03/02/20 Page 7 of 7 PageID #: 234
Akeem Henderson, et al. vs Willis-Knighton Medical Center
Richard M. Sobel, M.D.                                November 26, 2019

Page 169

1  access. You're going to give intravenous steroids,
2  not a shot at the end of the day when the child is
3  almost out the door, but as I said, it's definitely
4  better than nothing.
5       Q     So when this child, assuming that the
6  doctor is telling the truth in here that she is
7  improved and that she is no longer in the tripod
8  position, that she is not using accessory muscles,
9  you're going to still put an IV in her?
10      A     You do that immediately on
11 presentation.
12      Q     On a child --
13      A     A four-year-old in a tripod position,
14 absolutely.
15      Q     So the standard of care in your opinion
16 would be that any child who presents in the tripod
17 position with an asthma attack, you have to put an
18 IV in and hospitalize them?
19      A     I would say on the order of 99.9 out of
20 100, that would be the anticipation.
21      Q     What if medications are given, DuoNeb
22 and albuterol, and the breathing problems subside?
23      A     Well, it sounds like you're making
24 progress, getting lucky, but the potential for
25 material deterioration is clearly still there