UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AKEEM HENDERSON and JENNIFER ALEXANDER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE SUCCESSION OF A. H.<br>(Plaintiffs)<br>VERSUS<br><br>WILLIS-KNIGHTON MEDICAL CENTER d/b/a WILLIS KNIGHTON SOUTH HOSPITAL<br>(Defendant) | CIVIL ACTION NO. 5:19-CV-00163<br><br>JUDGE ELIZABETH E. FOOTE<br><br>MAGISTRATE JUDGE MARK L. HORNSBY |

**PLAINTIFFS' OPPOSITION TO WILLIS-KNIGHTON'S *DAUBERT* MOTION TO LIMIT THE SCOPE OF DR. RICHARD SOBEL'S TESTIMONY**

NOW INTO COURT COME Plaintiffs, Akeem Henderson and Jennifer Alexander, individually and as duly appointed Administratrix of the Succession of her late daughter, A.H., who respectfully Oppose Willis-Knighton's *Daubert* Motion to Limit the Scope of Dr. Richard Sobel's Testimony, as more particularly set for below, to-wit:

**LAW AND ARGUMENT**

Willis-Knighton's *Daubert* Motion to Limit the Scope of Dr. Richard Sobel's Testimony is a curious filing. Although Willis-Knighton cites Rule 702 of the Federal Rules of Evidence in the motion as well as *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the defendant does not even attempt analysis of any *Daubert* factors in its *Daubert* motion. Failure to undertake a *Daubert* analysis or explain a departure from *Daubert* has been held reversible error. See *Black v. Food Lion*, (5th Cir. 1999) 171 F.3d 308 at 314; and more recently, *Carlson v. Bioremedi Theraputic Systems, Inc.*, (5th Cir. 2016) 822 F.3d 194 at 201.

Part "1" of the motion requests this Court limit "Dr. Sobel's testimony <u>only</u> to his opinions on the medical treatment provided to the patient."[1] (Emphasis maintained) In Part "2", Defendant acknowledges "there will necessarily be testimony at trial regarding the medical care provided to A.H.",[2] but then claims "Any testimony regarding whether the standard of care was met is beyond the scope of allegations set forth in Plaintiffs' Complaint, and is therefore not relevant to this EMTALA matter..."[3]

1. Opposition to "Dr. Richard Sobel is not qualified to offer opinions and conclusions as to whether EMTALA was violated in this case."

Willis-Knighton does not attack Dr. Sobel's experience, education, training or methodology and does not assert that Dr. Sobel's opinions are not based in fact or are unreliable in any way. Instead, Willis-Knighton seeks a blanket declaration that Dr. Sobel cannot state a conclusion of law, i.e. that Willis-Knighton violated EMTALA. Willis-Knighton concludes by requesting the Court limit "Dr. Sobel's testimony <u>only</u> to his opinions on the medical treatment provided to the patient."[4] The problem with this argument is that Dr. Sobel has not espoused any legal opinion in any of his expert testimony, which is already limited to the medical treatment provided A.H. Indeed, Willis-Knighton has not identified any specific testimony of Dr. Sobel which it seeks to strike. Defendant's objection is premature, at best, and should be denied.

2. Opposition to "Defendant seeks the exclusion of any testimony or evidence regarding the standard of care applicable to A.H.'s healthcare providers, because such testimony goes beyond the scope of the complaint."

Once Willis-Knighton became aware A.H. presented with an Emergency Medical Condition, the hospital acquired an affirmative duty to stabilize her prior to discharge.

---

[1] Doc 28 p. 6 of Defendant's supporting Memorandum.
[2] Doc 28 p. 7 of Defendant's supporting Memorandum.
[3] Doc 28 p. 6-7 of Defendant's supporting Memorandum.
[4] Doc 28 p. 6 of Defendant's supporting Memorandum.

EMTALA's stabilization requirements is statutorily defined as "...to provide such medical treatment of the emergency medical condition as may be necessary to assure, within a reasonable degree of medical probability, that no material deterioration of the condition is likely to result..." 42 U.S.C.A. § 1395dd; *Smithson v. Tenet Health System Hospitals, Inc.*, U.S.D.C. 07/30/08 2008 WL 2977361; citing *Battle ex rel. Battle v. Memorial Hosp. at Gulfport*, (5th Cir. 09/20/00) 228 F.3d 544 at 558 and *Marshall on Behalf of Marshall v. East Carroll Parish Hosp. Service Dist.* (5th Cir. 02/09/98) 134 F.3d 319 at 325.

The Fifth Circuit allows expert testimony to assist the trier of fact in determining whether a participating hospital had actual knowledge as to whether a patient presented with an emergency medical condition and whether the treatment provided the patient was sufficient to stabilize the patient in regards to an EMTALA claim. See *Battle ex rel. Battle v. Memorial Hosp. at Gulfport*, (5th Cir. 09/20/00) 228 F.3d 544 at 558 - 559 citing *Burditt v. United States Dep't of Health & Human Servs.*, 934 F.2d 1362 at 1369 (5th Cir. 1991) compare with *Pettyjohn v. Mission-St. Joseph's Health System, Inc.*, (U.S.D.C. W.D. North Carolina 11/22/00) 2000 WL 33311929 at p. 2.

Willis-Knighton admits, "there will necessarily be testimony at trial regarding the medical care provided to A.H."[5] Plaintiffs agree. In this case, Dr. Sobel will provide expert testimony as to whether the hospital had actual knowledge A.H. presented with an Emergency Medical Condition and whether the treatment provided the patient was sufficient "...to assure, within a reasonable degree of medical probability, that no material deterioration of the condition is likely to result..." before discharging the child.

---

[5] Doc 28 p. 7 of Defendant's supporting Memorandum.

Plaintiffs should not be precluded from presenting the jury expert medical testimony regarding the standard of care required under EMTALA's stabilization provision, simply because Willis-Knighton has recast its failure to stabilize A.H. as "malpractice" in brief.

Plaintiffs point out that the testimony cited by the defendant wherein Dr. Sobel references "standard of care" is in direct response to Willis-Knighton's questions as to the "standard of care", to-wit:

> Q:  In your opinion who was negligent in the treatment of the patient, The doctor or the hospital nurses?
>
> A:  Both.
>
> Q:  So it's your opinion that there was a breach of the standard of care by both the treating ER Physician and hospital nurses in treating this patient; is that right?
>
> A:  Yes. And the respiratory therapist, if they were even involved. I haven't been able to detect the presence of a respiratory therapist yet, but I haven't excluded the possibility that there was one involved.
>
> Q:  And so it's also your opinion that the respiratory therapist breached the standard of care in the treatment of the patient in this case?
>
> A:  Well, that becomes likely because there is no documentation unless, there is documentation found on discovery. I don't know if discovery is complete. But unless there is documentation of the involvement of a respiratory therapist found, that would be a breach of the standard of care. You can't really treat a patient as a respiratory therapist in an emergency department without any documentation.
>
> Q:  Do you remember what Mr. Banks told you about the patient's treatment in this case? Independent of your review of the case, were you told anything?
>
> A:  You mean what he told me as a thumbnail sketch of the case - -
>
> Q:  Yes, sir.

> A: - - before he sent me the case?
>
> Q: Yes, sir.
>
> A: No. I don't specifically recall. I would assume he told me it was a four-year-old that had exacerbation of asthma, history of prematurity, was discharged, and returned to the hospital in cardiac arrest some three or four hours later.
>
> ...
>
> Q: So when this child, assuming that the Doctor is telling the truth in here that she is improved and that she is no longer in the tripod position, that she is not using accessory muscles, your still going to put an IV in her?
>
> A: You do that immediately on presentation.
>
> Q: So the standard of care in your opinion would be that any child who presents in the tripod position with an asthma attack, you have to put an IV in and hospitalize them?
>
> A: I would say on the order of 99.9 out of 100, that would be the anticipation.
>
> Q: What if medications are given, DuoNeb and albuterol, and the breathing problems subside?
>
> A: Well, it sounds like you're making progress, getting lucky, but the potential for material deterioration is still there.[6]

If the defense meant to question Dr. Sobel about a standard of care unrelated to EMTALA, it should have so specified. Otherwise, it appears the defense is objecting to its own line of questioning.

Lastly, defendant's Supplemental Rule 26 Disclosures dated January 26, 2020, states that Willis-Knighton will call Dr. David Easterling in this trial to testify "that his medical treatment was at all times *within the standard of care* and that he did not discharge A.H. in unstable condition." (Emphasis supplied) It seems disingenuous for Willis-Knighton to disclose that it

---

[6] Excepts from Dr. Sobel's Deposition appearing as Exhibits attached to Willis-Knighton's supporting memorandum.

will call a witness at trial to testify as to the standard of care relating to plaintiffs' EMTALA claim, and then argue plaintiffs' expert should be precluded from testifying as to the standard of care relating to plaintiffs' EMTALA claim.

## CONCLUSION

For the above and foregoing reasons, Willis-Knighton's Motion to Limit the Scope of Dr. Sobel's testimony should be denied.

Respectfully Submitted:

_____
SEDRIC E. BANKS LBN 2730
S. HUTTON BANKS LBN 37377
1038 North Ninth St.
Monroe, Louisiana 71201
318-388-1655 telephone
318-816-5026 facsimile
sedbanks@aol.com
*Attorneys for Akeem Henderson and Jennifer Alexander*

## CERTIFICATE OF SERVICE

The foregoing has been served on opposing counsel electronically via the CM/ECF/PACER system on this 6nd day of March, 2020.

_____
S. HUTTON BANKS