UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **Akeem Henderson, et al.** <br><br> Plaintiffs; <br><br> v. <br><br> **Willis-Knighton Medical Center d/b/a Willis-Knighton South** <br><br> Defendant. | Case No. 5:19-CV-00163 <br><br> Judge Elizabeth E. Foote <br><br> Magistrate Judge Mark L. Hornsby <br><br> Jury Trial Demanded |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANT'S EXPERT JACQUELINE WHITE, M.D. AND TO STRIKE HER TESTIMONY AS UNRELIABLE

NOW INTO COURT, through undersigned counsel, comes Defendant Willis-Knighton Medical Center, who respectfully files this memorandum in opposition to Plaintiffs' Motion to Disqualify Defendant's Expert Jacqueline White, M.D. and to Strike her Testimony as Unreliable. Plaintiffs assert that Dr. Jacquelyn White, a board-certified emergency medicine physician, is not qualified to testify in this action, that her opinions are not based upon facts of record, and that her opinions are unreliable or speculative. Each argument lacks merit and Plaintiffs' motion should be denied for the reasons set forth herein. Defendant intends to present live testimony from Dr. White at the hearing on Plaintiffs' Motion.

### BACKGROUND

This case arises under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Plaintiffs allege Willis-Knighton violated EMTALA by failing to stabilize A.H. prior to discharge. A.H., a four-year-old female with a history of asthma and autism,

presented to the emergency department on February 10, 2018 at 1:54 a.m. in respiratory distress. After being triaged and screened at 2:05 a.m., the patient was seen by Dr. David Easterling, who ordered breathing treatments and medications, a chest x-ray and a flu test. The records indicate the patient's symptoms improved and resolved after treatment, and that her condition had returned to baseline. She was discharged home at 3:59 a.m.

EMTALA requires a hospital provide to a person who comes to the emergency department seeking emergency medical treatment: (1) an appropriate medical screening, and (2) stabilization of a known emergency medical condition prior to transferring the patient. *Battle v. Mem. Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) (citing 42 U.S.C. § 1395dd(a)–(c)).  The plaintiff must show that the hospital discharged the patient with actual knowledge that she had an unstabilized medical emergency.  *Battle ex rel Battle v. Memorial Hospital at Gulfport*, 28 F.3d at 558, (5th Cir. 2000), citing *Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 325 (5th Cir.1998). Plaintiffs have not alleged medical malpractice under state law, and affirmatively plead in their Complaint that the screening was appropriate.  (Doc. 1, paragraphs 2 and 8).

Under EMTALA, an emergency medical condition is "stabilized" if "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(B). Transfer "means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital." 42 U.S.C. § 1395dd(e)(4).

Defendant's expert, Jacquelyn White, M.D., FACEP, ("Dr. White"), a board certified emergency medicine physician with more than twenty-five years of experience, reviewed the medical records from the Willis-Knighton South Emergency Department regarding A.H.'s

treatment on February 10, 2018. Dr. White is of the opinion that the medical record contains no evidence that the patient was unstable at discharge. Dr. White prepared a written report containing her opinions, which was sent to counsel for Plaintiffs on January 24, 2020. *Exhibit A, Expert Report of Dr. White*. Dr. White's discovery deposition was taken by Plaintiffs on February 12, 2020. *Exhibit B, Excerpts of Deposition of Dr. White*.

## ARGUMENT

Plaintiffs' motion mischaracterizes and misquotes Dr. White's deposition testimony multiple times, sensationalizes irrelevant facts, and fails to assert a legitimate basis for excluding Dr. White's opinion in this case. Plaintiffs emphasize prior medical malpractice complaints, which are irrelevant to Dr. White's qualifications as an expert, and would only bear on her credibility, if anything. Credibility of a witness is to be assessed by the jury alone and is not an appropriate *Daubert* issue.

Dr. White never testified that "she did not consider herself qualified to be an expert in cases involving EMTALA claims" as stated in Plaintiffs' motion. (Doc. 26-2, p. 5). Dr. White testified[1]:

```
17      Q.  Do you consider yourself an expert in EMTALA?
18      A.  No, sir.
```

This is different from Plaintiffs' incorrect statement that Dr. White swore she was not qualified to testify in this case. Dr. White testified that she reviewed EMTALA guidelines in reviewing the case and has done EMTALA training and continuing education as part of her practice, but appropriately stated in her deposition that she is not an "expert" in EMTALA.[2]

---

[1] *Exhibit B, Deposition of Dr. White, p. 70.*
[2] *Exhibit B, Deposition of Dr. White, p. 13-14.*

As discussed in detail in Willis-Knighton's *Daubert* Motion to Limit the Scope of Richard Sobel's Testimony (Doc. 28), the case law clearly indicates a physician is not qualified to testify as to legal definitions and ultimate conclusions of law. Dr. White is not qualified to give expert testimony regarding a law, but is absolutely qualified, based on her education, training and experience, to opine as to emergency room medical treatment. Neither Dr. Sobel nor Dr. White are qualified to be "EMTALA experts."

Plaintiffs' take issue with Dr. White's non-review of the Willis-Knighton inpatient O2 policy. Dr. White did not review the O2 Policy referenced by Plaintiffs for several reasons. <u>Willis-Knighton's O2 policy was not actually produced in this case and was obtained by counsel for Plaintiffs' in a separate matter</u>.[3] Dr. White was retained by Defendant to review the medical records, provide an opinion as to the medical treatment provided to A.H. in the emergency department, and render an opinion as to whether the patient was stable at the time of discharge. The O2 policy referenced by Plaintiffs is an <u>inpatient</u> policy – applying only to patients admitted to the hospital.[4] It is not applicable to the emergency room situation here, so there was no reason for Dr. White to review the policy prior to her deposition. Her failure to do so is certainly not grounds for exclusion as a witness.

**1. Dr. White is qualified to render an opinion as to the medical treatment at issue in this EMTALA proceeding.**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

---

[3] *Exhibit B, Deposition of Dr. White, p. 83.*
[4] *Exhibit B, Deposition of Dr. White, p. 83.*

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert* at 588; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).

In order to qualify as an expert, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004).

Jacquelyn White, M.D., FACEP is a physician licensed in Louisiana, board-certified in Emergency Medicine, and has practiced in that field for more than 25 years. Dr. White completed a residency in Emergency Medicine at the University of Arkansas Medical Center from 1992-1995. Dr. White has continually practiced emergency medicine since 1995 and currently works in the emergency department at Northern Louisiana Medical Center in Ruston, Louisiana and Glenwood Regional Medical Center in West Monroe. *Exhibit C*, *Curriculum Vitae of Dr. White.*

Dr. White's educational and professional background indicate she is well-qualified to offer opinions in the field of emergency medicine, including but not limited to patients' presentation in the ER, treatment of emergency patients, whether the patient's condition is likely to deteriorate, and stability at discharge.

**2. Dr. White's opinion is based on her thorough review of the medical records in this case and was based on sufficient facts and data.**

Plaintiffs assert that Dr. White's opinion is not based on sufficient facts or data under Rule 702(b) of the Federal Rules of Evidence. Dr. White's opinion is based on the exact same facts available to Plaintiffs' expert Dr. Sobel – being the medical records of A.H. Plaintiffs argue the merits of their case rather than whether Dr. White is actually qualified to give an opinion in emergency medicine.

Plaintiffs argue that Dr. White was "gravely mistaken" about the facts of the case, based on the opinions of their own expert, Dr. Sobel. Plaintiffs assert Dr. White's opinion is incorrect, based on their own expert's reading of the record. Dr. White's testimony is based on her review of the record and opinion formed as a result of that review. Whether her opinion on the contents of the record conflicts with Dr. Sobel's is not indicative of whether she is actually qualified to render such opinion. Plaintiffs ask the court to determine that Dr. Sobel is correct and Dr. White is not. Plaintiffs will have the opportunity to cross-examine Dr. White at trial regarding their perceived "mistakes" in her opinion.

Plaintiffs also take issue that Dr. White did not review the autopsy report or death certificate of the patient. **Dr. White did not review those documents because they were not in Defendant's possession and were never produced by Plaintiff.** After a telephone status conference with Magistrate Judge Hornsby, the Court's minutes instructed Plaintiffs to turn over to all counsel all records of treating healthcare providers. (Doc. 25). Insofar as the autopsy report is considered a record of a treating health care provider, it was not produced by Plaintiff in accordance with the Court's instruction, or as part of Plaintiffs' initial disclosures. It was also not attached to Dr. Sobel's report. Defendant saw the autopsy report for the first time upon receipt of Plaintiffs' *Daubert* motion. (Doc. 26-7). To the extent Plaintiffs attempt to exclude Dr. White on the basis that she didn't review the autopsy report and death certificate, Plaintiffs motion must be denied as the documents were not in Defendant's possession due to Plaintiffs' failure to produce them.

### 3. Dr. White's opinions are reliable under Rule 702 and *Daubert*.

Plaintiffs' final argument is that Dr. White should be excluded because her opinion is based "solely on her own subjective interpretation, speculation, and conjecture."

Expert witnesses are allowed to make inferences and assumptions based on their expertise. The Federal Rules of Evidence specifically contemplate experts will testify as to opinions and inferences. LCE Art. 702-705. Plaintiffs' argument that Dr. White's opinion "is based on conjecture and rumor" is ridiculous and completely mischaracterizes her deposition testimony. Plaintiffs state "the opinion that A.H. was stable because the emergency room physician said she was stable cannot be scientifically tested." (Doc. 26, p. 15). Dr. White isn't basing her opinion on something Dr. Easterling literally said out loud or "declared" as suggested by Plaintiffs – **she clearly testifies her opinion is based on Dr. Easterling's documentation contained in the Willis-Knighton medical record.[5]**

```
12      Q.   Your statement on page 1 of your report, Doctor, you
13   mention that approximately two hours after entering the
14   emergency department, "The patient was stable for
15   discharge."  Was that based on a medical examination, that
16   statement?
17      A.   My statement was based on review of the chart.
```

Based on Plaintiffs' logic, if the medical record is considered "conjecture and rumor" by Plaintiffs, then the same should hold true for Dr. Sobel and he should not be permitted to give any opinions regarding the medical chart either.

Plaintiffs further regurgitate the language from article 702 and *Daubert*, but fail to show how Dr. White's opinion is unreliable. Plaintiffs argument is conclusory and not supported by the record evidence. Furthermore, Plaintiffs' ambiguous argument that "[s]elf-serving, out of court statements offered for the truth of the matter asserted is known for a high rate of error" [sic] invokes hearsay rules that have nothing to do with the instant motion.

---

[5] Exhibit B, Deposition of Dr. White, p. 75.

Based on her education and more than 25 years of experience practicing emergency medicine, Dr. White is qualified to render opinions regarding the medical treatment provided to A.H. in the emergency department at Willis-Knighton, including opinions as to the child's symptoms and presentation, the treatment received, and whether the child was stable at the time of discharge.

## CONCLUSION

Plaintiffs fail to show Dr. White is not qualified to testify at trial. Dr. White is well-qualified to offer opinions in emergency medicine regarding the facts of this case. For the foregoing reasons, Defendant prays Plaintiffs' motion be denied.

RESPECTFULLY SUBMITTED,

*/s/ Lamar P. Pugh*
**Lamar P. Pugh**
Louisiana Bar Roll Number. 20070
**Robert G. Pugh, III**
Louisiana Bar Roll Number 36631
**PUGH, PUGH & PUGH L.L.P.**
333 Texas Street, Suite 2100
Shreveport, Louisiana 71101
Telephone: 318-227-2270
Telecopier: 318-227-2273
lamar@thepughlawfirm.com

*/s/ Shelby L. Giddings*
**Robert W. Robison, Jr.**
Louisiana Bar Roll Number 24630
**Shelby L. Giddings**
Louisiana Bar Roll Number 38232
**WATSON, BLANCHE, WILSON & POSNER, LLP**
505 North Boulevard
Baton Rouge, Louisiana 70821
Telephone: 225-387-5511
Fax: 225-387-5972
rrobison@wbwplaw.com
*Attorneys for Defendant Willis-Knighton Medical Center d/b/a Willis-Knighton South*

[certificate of service on next page]

## **CERTIFICATE OF SERVICE**

The foregoing has been provided to opposing counsel electronically via the CM/ECF/PACER system, on this 18th day of March, 2020.

*/s/ Shelby L. Giddings*
Shelby L. Giddings