UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **Akeem Henderson, et al.** Plaintiffs; v. **Willis-Knighton Medical Center** Defendant. | Case No. 5:19-CV-00163 Judge Elizabeth E. Foote Magistrate Judge Mark L. Hornsby Jury Trial Demanded |

**MEMORANDUM IN SUPPORT OF RULE 56 MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, comes Defendant, Willis-Knighton Medical Center ("Willis-Knighton"), and respectfully submits this Memorandum in Support of its Motion for Summary Judgment. Plaintiffs cannot prove "patient dumping" under the Emergency Medical Treatment and Labor Act. For the reasons set forth herein and pursuant to FRCP 56, there are no genuine issues of material fact and the evidence supports summary judgment in favor of Defendant.

**PROCEDURAL AND FACTUAL BACKGROUND**

This action arises out of medical treatment provided to A.H., a minor child, in the Emergency Department at Willis-Knighton South & Center for Women's Health ("Willis-Knighton South") on or about February 10, 2018. Plaintiffs filed a Complaint naming Willis-Knighton as a defendant on February 11, 2019, alleging claims under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395(dd). (Doc. 1). Plaintiffs have **not** alleged any claim of medical malpractice against Defendant pursuant to the Louisiana Medical

1

Malpractice Act. In fact, the Complaint specifically states "[n]o relief is sought under medical malpractice." (Doc. 1, paragraph 2).

At the time of the treatment at issue, A.H. was a 4-year-old female with a past medical history of asthma and autism, and used a breathing machine at home. The patient reportedly was seen a few days before at a WK Urgent Care Facility, where she was diagnosed with an upper respiratory infection/strep, and given a Z-pak. The patient was brought to the emergency room at Willis-Knighton South by her mother and grandmother on February 10, 2018.

### Timeline – February 10, 2018[1]

01:54   A.H. arrived in emergency department at WKS.

02:04   DuoNeb 1 unit Dose ordered by Dr. Easterling.

02:05   Triage by Susan Rainer, RN. Pulse 156, Resp 35, Pulse Ox 91% on room air. Per mother, patient woke up at midnight wheezing and coughing, gave breathing treatment at home with no relief, patient currently sitting in tripod position. Respiratory effort is labored, wheezing bilaterally.

02:11   Siderails up x 1, bed in low position, child being held by parent, **pulse oximetry, bedside monitor alarms on and audible.**

02:30   Flu A and Flu B tests negative.

02:31   Stat Influenza test and Stat Chest X-Ray ordered by Dr. Easterling.

02:33   Dr. Easterling sees patient. Exam: The patient does not display signs of respiratory distress, respirations normal, symmetrical, no use of accessory muscles, no grunting, no evidence of nasal flaring, no appreciated paradoxical movements, no prolong exhalations, no pursed lip breathing, no retractions, no shallow respirations, no splinting or tachypnea.  Breath sounds: rales are not appreciated, rhonchi are not appreciated, wheezing is mild, bronchial sounds not appreciated, decreased breath sounds are not appreciated, stridor not appreciated.

02:33   **Reassessment:**  patient states symptoms have improved.

02:46   **Chest X-ray final report**: No acute cardiopulmonary disease.  Heart size and contour are within normal limits.  The lungs are clear of infiltrate, mass lesion, or effusion.   No significant skeletal abnormality is seen.

---

[1] See Exhibit A, and attached excerpts from the medical records of A.H. from Willis-Knighton South.

03:11   Albuterol 1 unit dose 2.5 mg ordered by Dr. Easterling.

03:12   Decadron steroid ordered by Dr. Easterling.

03:16   Albuterol 1 unit dose 2.5 mg inhalation given by Nurse Rainer.

03:23:  **Pule 145, Resp 34, Pulse Ox 99%.**

03:44   Decadron 4 mg steroid given. No adverse reaction to DuoNeb, respiratory status improved, tolerated well.

03:50   Dr. Easterling - Reviewed vital signs, nurses notes, lab test results, radiologic studies, and had a detailed discussion with the patient/and or guardian regarding: historical points, exam findings, and any diagnostic results supporting the discharge/admit diagnosis, lab results, radiology results, the need for outpatient follow-up. **Response to treatment: the patient's symptoms have resolved after treatment and patient's condition has returned to baseline**.

03:52   Discharge ordered by Dr. Easterling. Prescription for prednisolone 15 mg/5mL oral solution, and instructions to follow up with primary care physician.

03:55   No adverse reaction to Albuterol.

03:59   Discharged to home, ambulatory, with family. Discharge instructions given to mother. Mother understood instructions. **No questions or concerns expressed to Dr. Easterling at discharge.**

04:00   Follow-up response from Decadron: no adverse reaction; tolerated well. Follow-up response from Duoneb: no adverse reaction; respiratory status improved; tolerated well.

Following her discharge from Willis-Knighton South, A.H. was taken to her grandmother's house and went to sleep. A few hours later, A.H. patient reportedly woke up in respiratory distress, and was taken to the emergency department at WK Bossier Health Center at 07:24. The patient was treated at Willis-Knighton Bossier and subsequently transferred to Willis-Knighton South, where she was treated for respiratory and cardiac arrest and brain death. The patient expired in the hospital a few days later on February 16, 2018.

## ARGUMENT

**1. Plaintiffs cannot meet their burden of proving their claim under EMTALA.**

EMTALA, 42 U.S.C. § 1395(dd), was enacted by Congress in response to concerns about hospitals "dumping" patients who are uninsured or otherwise unable to pay for care, either by refusing emergency treatment or by failing to stabilize patients before discharge or transfer to another facility. *Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000). EMTALA does not create a national standard of care for hospitals or provide a federal medical malpractice cause of action. *See Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998); *Thornhill v. Jackson Par. Hosp.,* 184 F.Supp.3d 392, 401 (W.D. La. 2016).

EMTALA requires a hospital provide the following to a person seeking emergency medical treatment: (1) an appropriate medical screening, and (2) stabilization of a known emergency medical condition prior to discharge or transfer to another facility. *Battle v. Mem. Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) (citing 42 U.S.C. § 1395dd(a)–(c)).

**a. Screening.**

Pursuant to EMTALA, if an individual comes to the emergency department of a hospital requesting medical treatment, the hospital must provide "an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a).

Plaintiffs' Complaint affirmatively pleads an appropriate screening was provided by Willis-Knighton. (Doc. 1, paragraph 8). Accordingly, there is no genuine issue of material fact for trial as to whether the screening provided to A.H. was appropriate under EMTALA.

**b. Stabilization and Discharge.**

Under EMTALA, an emergency medical condition is "stabilized" if "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(B); *Green v. Touro Infirmary*, 992 F.2d 537, 539 (5th Cir. 1993). Transfer "means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital." 42 U.S.C. § 1395dd(e)(4). The hospital's responsibility under the statute ends when it has stabilized the individual's medical condition. *See Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir. 1991). EMTALA does not require a hospital to cure the condition, but only to stabilize it. *Green*, at 549.

Further, EMTALA does not impose a duty to stabilize unless and until the hospital has **actual knowledge** of a patient's unstable emergency medical condition. *Battle,* 228 F.3d 544, 558, citing *Marshall v. East Carroll Parish Hosp.,* 134 F.3d 319, 325 (5th Cir.1998).

EMTALA imposes a duty to stabilize only the condition Dr. Easterling diagnosed, not a condition that might have been revealed with the benefit of hindsight. Stabilization is evaluated **at the time of discharge**, and is determined relative to a patient's diagnosis, not what the patient "turns out to have," in retrospect. *See Vickers v. Nash General Hosp., Inc.*, 78 F.3d 139, 145 (4th Cir. 1996); *Hoffman v. Tonnemacher,* 425 F. Supp. 1120, 1131 (E.D. Cal. 2006); *Bergwall v. MGH Health Servs.,* 243 F.Supp.2d 364, 374–75 (D.Md. 2002).

Dr. Easterling determined the patient had an emergency medical condition at presentation, and treated her for respiratory distress by ordering diagnostic tests, three different medications, and monitoring her respiratory status and pulse oximetry during her treatment in the emergency department. Following all of that treatment, Dr. Easterling perceived A.H. to be stable for

discharge as her condition had improved and she had returned to baseline. Dr. Easterling had no duty under EMTALA to further stabilize conditions not diagnosed. **Dr. Easterling's affidavit establishes that <u>at the time of discharge</u>, he did not have actual knowledge that the patient was still suffering from an emergency medical condition.** A.H. exhibited no distress, was non-toxic, and well-appearing prior to discharge.[2] Plaintiffs have come forward with no specific facts establishing that Willis-Knighton had actual knowledge that A.H. had an unstablized medical emergency condition at the time of her discharge. There is no such evidence.

Finally, EMTALA imposes no duty to re-screen a patient after the initial screening is completed and an emergency medical condition is found and stabilized. Plaintiffs seem to suggest, through their pleadings, as well as from the testimony of Dr. Sobel, that Dr. Easterling had a duty under EMTALA to screen A.H. again prior to her discharge. A re-screening is not required by EMTALA and the hospital's obligation to screen the patient was met immediately upon the initial screening, which by Plaintiffs' own admission was proper.

There is no genuine issue of material fact for trial as to whether Willis-Knighton Medical Center complied with its duties under EMTALA.

## 2. <u>EMTALA is not a federal medical malpractice statute.</u>

Plaintiff's Complaint states "no relief is sought under medical malpractice." (Doc. 1, paragraph 2). Plaintiffs essentially allege medical negligence under the guise of an EMTALA claim, presumably to circumvent the limitation on recovery applicable to state malpractice claims.

Essentially, Plaintiff alleges Dr. Easterling committed medical malpractice and breached the standard of care applicable to an emergency room physician by failing to adequately diagnose and treat the A.H. prior to discharge, and by failing to admit her to the hospital. While it is

---

[2] Exhibit A, Affidavit of Dr. Easterling.

6

Defendant's position that Dr. Easterling did not act negligently in treating A.H. at any point during his care, <u>even if Dr. Easterling *did* commit medical malpractice, such negligence would be entirely irrelevant to Plaintiffs' EMTALA claim.</u> EMTALA is not a federal medical malpractice statute and does not create an avenue of recovery for medical negligence claims. *Marshall ex rel Marshall v. East Carroll Par. Hosp. Serv. Dist.,* 134 F.3d 319, 322 (5th Cir. 1998).

The Fifth Circuit and federal courts nationwide have clearly drawn a line between the sort of claims made by plaintiff in this case and a claim properly made under EMTALA: "A treating physician's failure to appreciate the extent of the patient's injury or illness as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." *Marshall,* 134 F.3d 319, 323. EMTALA further "does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware." *Vickers v. Nash General Hosp., Inc.*, 78 F.3d 139, 145 (4th Cir. 1996).

The instant case is factually similar to *Kilroy v. Star Valley Medical Center*, in which a three-year-old girl was treated in the emergency room for respiratory distress, discharged home, and died a few hours later. *Kilroy v. Star Valley Medical Center*, 237 F.Supp.2d 1298, (D. Wyo. Dec. 18, 2002). The patient arrived at the emergency room with difficulty breathing, fever, increased pulse rate, increased respirations, decreased oxygen saturation levels, coughing, and nasal flaring. The emergency room doctor ordered Albuterol nebulizer, and the patient's oxygen saturation increased. The doctor made diagnoses of lower respiratory tract infection and ear infection, as well as differential diagnosis of bronchiolitis, viral pneumonia, or bacterial pneumonia. The patient was discharged home with instructions to monitor her respiratory rate and

7

bring her back if her condition deteriorated, with prescriptions for antibiotic, Tylenol and Albuterol. The patient died in her sleep that night. *Kilroy, at 1301.*

In *Kilroy*, the patient's vital signs were not recorded at any time after her initial examination, and were not noted at discharge. *Id.* In the instant case, A.H.'s vitals were continuously monitored, and documented several times during her treatment in the emergency department. The *Kilroy* court granted summary judgment in favor of the defendant hospital, finding that the plaintiff could not use evidence of a treating physicians "poor medical judgment" to save their EMTALA stabilization claim.

Defendant anticipates Plaintiffs will argue that the vital signs charted in the medical record at the *beginning* of her treatment "should have" or "must have" put Dr. Easterling or Nurse Rainer on notice that A.H. was unstable at discharge. The *Kilroy* plaintiff made the same argument unsuccessfully*,* and the court found that any evidence of the "apparent" nature of an emergency medical condition is only relevant for a medical malpractice claim as such evidence would go to the reasonableness of treatment under the circumstances. *Id.* at 1306. Even if Plaintiff's expert gives the opinion that Dr. Easterling should have known that A.H.'s condition would have worsened, such opinion is not enough to create a genuine issue of material fact, as that opinion may be relevant to a state medical malpractice claim, but is not relevant to this EMTALA claim. *See e.g., Bryant v. Adventist Health System/West,* 289 F.3d 1162, 1166 (9th Cir. 2002) (holding an expert's opinion that a doctor should have known that the patient had a lung abscess was relevant to a malpractice claim, but not to an EMTALA claim).

The purpose of EMTALA was to address the societal concern of not treating patients who come to emergency rooms requesting treatment for an emergency medical condition on the basis of ability to pay, also known as "patient dumping." Whether the medical treatment actually

provided to the patient was "correct" or "good" is irrelevant. EMTALA is concerned with whether a patient had an emergency medical condition, and was refused treatment for some arbitrary, non-medical reason, such as an inability to pay. In other words, EMTALA was not intended to "ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances." *Collins v. DePaul Hospital*, 963 F.2d 303, 307 (10th Cir.1992) (quoting *Gatewood v. Washington Healthcare Corp.* 933 F.2d 1037, 1041 (D.C. Cir. 1991). There is no question that the patient in this case was afforded the same level of treatment provided to patients in similar circumstances.

### 3. Summary judgment standard.

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment, identifying each claim or defense, or the part of each claim or defense, on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56. *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004). Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine dispute as to material fact, and mover is entitled to Judgment as a matter of law. FRCP 56(c).

When a movant has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some abstract doubt as to the material facts. The nonmoving party must come forward with **specific facts** showing that there is a genuine issue for trial. *Gaspard v. J&H Marsh & Mc Lennan of Louisiana*, 105 F. Supp 2d 537, 539 (E.D. La. 2000). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

Defendant anticipates Plaintiff will provide the report and testimony of their purported expert, Dr, Richard Sobel, in opposition to this motion. Dr. Sobel's opinion testimony and report do not establish any specific facts that create any genuine dispute for trial. Dr. Sobel's testimony and report improperly set forth legal conclusions, assessments of Dr. Easterling's credibility, and are unsupported by the evidence in the medical records. Defendant has a pending motion to exclude Dr. Sobel's testimony for these reasons (Doc. 28), but would like to point out here that Dr. Sobel's testimony and report fail to create any legitimate or genuine factual issue precluding summary judgment in favor of Willis-Knighton.

Furthermore, Defendant retained its own expert in response to Dr. Sobel's report, Dr. Jacqueline White, who provides opinions as to the emergency medical treatment of A.H. in this case. Defendant asserts that the opinions of Dr. Sobel and Dr. White are irrelevant to a determination of this motion for summary judgment. Based on the law, the facts in evidence, and the medical records in this case, Plaintiffs cannot prove a claim for patient dumping under EMTALA. The affidavit of Dr. Easterling, who personally treated the patient, along with the medical records establish that no EMTALA violation occurred. A.H. was appropriately screened and determined to have an emergency medical condition, which was treated and resolved by Dr. Easterling. Because the patient had returned to baseline and her condition and respiratory status improved, Dr. Easterling discharged the patient, as he did not expect her condition to worsen.[3]

## **CONCLUSION**

For the foregoing reasons, Defendant Willis-Knighton Medical Center prays its motion be granted. Plaintiffs are unable to show that the hospital "dumped" A.H., by either failing to provide an emergency screening, or by having actual knowledge of an unstable condition and failing to

---

[3] Exhibit A, Affidavit of Dr. Easterling, p .4.

stabilize her prior to her discharge. The undisputed evidence shows that Willis-Knighton complied with the provisions and requirements of EMTALA while treating A.H., and Defendant respectfully requests its Rule 56 Motion for Summary Judgment be granted, dismissing Plaintiffs' claims with prejudice.

RESPECTFULLY SUBMITTED,

*/s/ Lamar P. Pugh*
**Lamar P. Pugh**
Louisiana Bar Roll Number. 20070
**Robert G. Pugh, III**
Louisiana Bar Roll Number 36631
**PUGH, PUGH & PUGH L.L.P.**
333 Texas Street, Suite 2100
Shreveport, Louisiana 71101
Telephone: 318-227-2270
Telecopier: 318-227-2273
lamar@thepughlawfirm.com

*/s/ Robert W. Robison, Jr.*
**Robert W. Robison, Jr.**
Louisiana Bar Roll Number 24630
**Shelby L. Giddings**
Louisiana Bar Roll Number 38232
**WATSON, BLANCHE, WILSON & POSNER, LLP**
505 North Boulevard
Baton Rouge, Louisiana 70821
Telephone: 225-387-5511
Fax: 225-387-5972
rrobison@wbwplaw.com
*Attorneys for Defendant Willis-Knighton Medical Center d/b/a Willis-Knighton South*

**CERTIFICATE OF SERVICE**

The foregoing has been provided to opposing counsel electronically via the CM/ECF/PACER system, on this 20th day of April, 2020

*/s/ Shelby L. Giddings*
Shelby L. Giddings