UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **Akeem Henderson, et al.**  Plaintiffs; v. **Willis-Knighton Medical Center d/b/a Willis-Knighton South**  Defendant. | Case No. 5:19-CV-00163  Judge Elizabeth E. Foote  Magistrate Judge Mark L. Hornsby  Jury Trial Demanded |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Despite 24 pages of discussion, 73 footnotes, and 1,123 pages of exhibits, Plaintiffs' opposition does not show A.H. was "dumped" by Willis-Knighton ("WK"). Plaintiffs admit A.H. was **treated** in the WK emergency room and concede she was properly screened, which is prima facie evidence that WK did not engage in "patient dumping" in violation of EMTALA. The majority of EMTALA cases involve situations where medical treatment was allegedly refused due to the patient's inability to pay or lack of insurance. *See e.g., Burditt v. U.S. Dept. of Health and Human Services,* 934 F.2d 1362, 1366( 5th Cir. 1991) (patient had no means of payment); *Battle ex rel. Battle v. Memorial Hosp. at Gulfport,* 228 F.3d 544, 548, (5th Cir. 2000) (patient wrote "self-pay" on her emergency room paper work). A.H. was never denied treatment at WK on any of her 30-plus emergency room visits.

There is no evidence that Dr. Easterling, Nurse Susan Rainer, or any other Willis-Knighton health care provider knew <u>at the time of discharge</u> there would be a "material deterioration" of A.H.'s condition resulting from or occurring during transfer under 42 U.S.C. §1395dd. To the contrary, A.H. had improved and was doing better after treatment, which Plaintiffs' expert Dr.

1

Sobel even conceded during his deposition. The medical record also shows A.H. went home and went to sleep for a couple of hours before her condition worsened. Nurse Rainer's affidavit shows that A.H. was stable at the time of discharge, and not expected to get worse. Nurse Rainer was assured that a material deterioration of the patient was not likely to result from or during the patient's discharge, and was later surprised to learn that the patient had been returned to the hospital in critical condition – it was an unexpected result. *Exhibit A, Affidavit of Susan Rainer, RN*. A reasonable jury could not conclude that Willis-Knighton is liable to Plaintiffs under EMTALA for either its screening or stabilization of this patient.

### 1. Physician's Knowledge of Stability - Objective vs. Subjective Standard.

Defendant is unable to definitively state whether the physician's knowledge of stability at the time of discharge is determined under an objective or subjective standard because the Fifth Circuit is silent on this question. However, the case law does require stability be determined at the time of discharge and without the benefit of hindsight. Federal courts have not held that it is a constructive knowledge requirement –what the doctor knew or *should have known*.

Plaintiffs misstate the law in *Battle v. Memorial Hosp.,* 228 F.3d 544 (5th Cir. 2000) – the Fifth Circuit has **not** held that expert testimony is "required" for an EMTALA claim. Plaintiffs further cite *Liles v. TH Healthcare, Ltd.*, an unreported case out of the Eastern District of Texas, which contradicts Plaintiffs argument as the court ultimately held that it declined to "announce a rule that rule that would require expert testimony in every EMTALA case" *Liles v. TH Healthcare, Ltd.,* 2014 WL 1813312 (E.D. Tex., Marshall Div. May 5, 2014).

Courts have granted summary judgment on EMTALA claims even where the plaintiff presented the opinion of a medical expert. *See, e.g., Bryant v. Adventist Health System*, 289 F.3d 1162, 1166 (9th Cir. 2002) (affirming district court's summary judgment in favor of defendant, and finding "[a]lthough the expert's opinion may be relevant to a malpractice claim under state

2

law, it is not relevant to the EMTALA claim."); *Kenning v. St. Paul Fire and Marine Ins. Co.* 990 F. Supp 1104, 1109 (W.D. Ark. Dec. 24, 1997) (whether doctor's "determination was medically correct, or whether [she] was negligent in her diagnosis is not an issue to be determined under EMTALA."); *Holcomb v. Humana Medical Corp., Inc.*, 831 F.Supp. 829 (M.D. Ala. Aug. 26, 1993); *Scott v. Northern Louisiana Medical Center*, 2016 WL 8470184 (W.D. La. Sept. 9, 2016).

**2. The evidence presented by Plaintiffs fails to create any genuine issue of material fact.**

a. Affidavit of Jennifer Alexander. The affidavit of Jennifer Alexander does not create a genuine issue of material fact precluding summary judgment. Ms. Alexander is not qualified to opine as to medical treatment, standards, or diagnoses in this case. Whether the child was able to make it up the stairs when dropped off by her mother is entirely immaterial to whether the hospital discharged A.H. in stable condition under EMTALA. Even taken as true, Jennifer Alexander's affidavit does not create any genuine issue of material fact precluding summary judgment in favor of WK because it fails to show that Dr. Easterling or Willis-Knighton discharged A.H. in unstable condition.

b. Testimony of Dr. Richard Sobel. Dr. Sobel's opinion that A.H. should have been admitted to the hospital is based on the patient's *initial* presentation. The case law is clear that the determination of the patient's stability for the purposes of ETMALA is whether the patient was stable **at the time of discharge**, in reference to the patient's diagnosis, and not what in hindsight a patient "turns out to have." *Guzman v. Mem'l Hermann Hosp. Sys.*, (S.D. Tex. 2009), 637 F.Supp.2d 464, 503. Dr. Sobel is unable to cite any portion of the medical record that shows A.H. was actually unstable at discharge. Dr. Sobel speculates that it would be "impossible" to "get a safe discharge" given A.H. medical history and respiratory distress, but the medical records show that the patient was "safely" discharged with the same basic history and initial presentation of

3

respiratory distress approximately 30 times from the Willis-Knighton emergency room in the past. Dr. Sobel's hyperbolic testimony is not based in the medical evidence int this case and is only conjecture that fails to create any genuine issue of fact.

    c. <u>SANE Report and Sexual Assault Investigation.</u> The investigation into the suspected sexual assault occurring *after* the treatment at issue does not create any genuine issue of material fact as to whether WK violated EMTALA on February 10, 2018. However, Plaintiffs' statement that WK has "forced the issue" of the SANE report into these proceedings plaintiffs is disingenuous, as Plaintiffs' counsel first raised the issue of the SANE report during the deposition of Dr. White, but never provided copies of any report, and then subpoenaed the full SANE report just two months ago (despite discovery being closed). Defendant made no argument regarding the SANE report or the patient's sexual assault in its Motion for Summary Judgment or supporting memorandum. Plaintiffs' contention that A.H.'s sexual trauma was "most likely caused by hospital personnel" as an "abhorrent attempt to silence plaintiffs and cover-up its EMTALA violation" (Doc. 50, p. 6) is inappropriate, defamatory, and potentially a violation of the rules of professional conduct. Defendant refrains from addressing the sexual assault issues here – which were not raised as allegations in Plaintiffs' Complaint – as they are not relevant to this Motion and offer no evidence supporting an EMTALA violation, but is happy to provide additional briefing on the issue if the Court so requires.

    While irrelevant to the outcome of this motion, Plaintiffs' opposition also includes medical records and documents not previously disclosed to Defendant. Plaintiffs failed to cooperate with the Court's January 22, 2020 instruction (Doc. 25) as Defendant is seeing the Bossier Fire

Department EMS Run Sheet), the Autopsy Investigation and the Shreveport Police Department Incident Report for the first time with Plaintiffs' opposition. (Doc. 50-11, 50-12, and 50-14).[1]

The only question before this Court is whether Willis-Knighton Medical Center met the screening and stabilization requirements of EMTALA. Willis-Knighton has met its burden in showing Plaintiffs are unable to succeed on their EMTALA claim, as there is no evidence that A.H. was discharged in unstable condition, or that the hospital actually knew of the patient's instability at the time of discharge. For these reasons, as well as those in the original Motion, Defendant Willis-Knighton Medical Center prays summary judgment be granted in its favor.

Respectfully Submitted,

*/s/ Lamar P. Pugh*
Lamar P. Pugh
Louisiana Bar Roll Number. 20070
Robert G. Pugh, III
Louisiana Bar Roll Number 36631
PUGH, PUGH & PUGH L.L.P.
333 Texas Street, Suite 2100
Shreveport, Louisiana 71101
Telephone: 318-227-2270
Telecopier: 318-227-2273
lamar@thepughlawfirm.com

*/s/ Robert W. Robison, Jr.*
Robert W. Robison, Jr.
Louisiana Bar Roll Number 24630
Shelby L. Giddings
Louisiana Bar Roll Number 38232
WATSON, BLANCHE, WILSON & POSNER, LLP
505 North Boulevard
Baton Rouge, Louisiana 70821
Telephone: 225-387-5511
Telecopier: 225-387-5972
rrobison@wbwplaw.com
*Attorneys for Defendant*
*Willis-Knighton Medical Center*
*d/b/a Willis-Knighton South*

---

[1] This is an ongoing pattern, as Plaintiffs also failed to disclose the LSU Health Sciences Center Autopsy Report, which Defendant saw for the first time as an attachment to Plaintiffs' *Daubert* motion. (Doc. 26-7).

5

**CERTIFICATE OF SERVICE**

  I hereby certify a copy of the foregoing has been provided to opposing counsel electronically via the CM/ECF/ PACER system, on this 14th day of May, 2020.

*/s/ Shelby L. Giddings.*
Shelby L. Giddings
