UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AKEEM HENDERSON, ET AL. | CIVIL ACTION NO. 19-163 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| WILLIS-KNIGHTON MEDICAL CENTER | MAGISTRATE JUDGE HORNSBY |

**Memorandum Ruling**

The Court held a *Daubert* hearing in the above-captioned matter on May 27, 2020. At the hearing, the Court orally ruled in part on the then-pending *Daubert* motions. It deferred issuing a final ruling on Plaintiffs' motion to disqualify Dr. Jacquelyn White [Record Document 26], however, and ordered supplemental briefing. Record Document 54 at 2. The parties have filed the requested briefing. Record Documents 56 and 58. For the following reasons, Plaintiffs' motion is denied.

I. Background

This case centers around the treatment 4-year old asthmatic, A.H., received at Willis-Knighton Medical Center South ("WKMC") on February 10, 2018. Around 2:00 a.m., A.H. presented to the WKMC emergency department with breathing problems. After administering treatment, doctors discharged A.H. around 4:00 a.m. Just before 7:00 a.m., A.H. suffered respiratory arrest at home and was later declared brain dead. She died on February 16, 2018 when doctors discontinued life support.

Plaintiffs, A.H.'s parents, brought suit alleging that WKMC's treatment the morning of February 10, 2018 violated the Emergency Medical Treatment and Labor Act (EMTALA).

They contend that A.H. presented at WKMC with an emergent medical condition and that WKMC failed to stabilize A.H. before discharging her.

Both parties engaged experts to testify regarding whether A.H. was stable at the time of her discharge from the emergency department. Both parties also filed *Daubert* motions. Plaintiffs' motion sought to disqualify Defendant's expert, Dr. Jacquelyn White ("Dr. White"), as an expert in a case involving EMTALA.[1] They raised several arguments, including that Dr. White lacked the qualifications to testify as an expert in EMTALA and that Dr. White's opinion was not based upon facts of record.

The Court held a *Daubert* hearing in which Dr. White testified. After hearing her testimony, the Court ruled that Dr. White's opinion was based in fact, that her failure to review several documents did not render her opinion inadmissible, and that Dr. White was qualified to testify as an expert in emergency medicine. Record Document 54 at 2. This means that Dr. White is qualified to opine regading the standards by which an emergency department physician could conclude that a child suffering from asthma is stable. *Id.* The Court, troubled by Dr. White's testimony demonstrating a fundamental misunderstanding about the applicability of EMTALA to certain situations, deferred issuing a final ruling on whether Dr. White is qualified to provide an expert opinion regarding stabilization under EMTALA. The Court requested that the parties file additional briefing addressing whether stabilization under EMTALA is judged by the same standards as is generally applied to emergency medicine. Stated differently, the Court asked the parties

---

[1] Defendant's motion sought to limit the scope of the testimony provided by Plaintiffs' expert Dr. Richard Sobel. The Court orally ruled on this motion at the *Daubert* hearing, and thus this opinion does not address that motion. Record Document 54.

to address "whether the criteria Dr. White used to evaluate stability in her report is the same criteria applicable to stabilization under EMTALA." *Id.*

II. Law and Analysis

Federal Rule of Evidence 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue." As the Court has already ruled, experts in this matter will be allowed to opine as to whether A.H. was stabilized, as defined by EMTALA, when discharged from the emergency department. An expert's opinion regarding stabilization under EMTALA will not be helpful to the trier of fact if the expert's opinion is based on an inaccurate interpretation of EMTALA's stabilization requirement. Therefore, Dr. White should only be allowed to testify regarding A.H.'s stabilization under EMTALA if her opinion applies the same standards to stabilization as are required by EMTALA.

Under EMTALA, a patient is "stabilized" when "no material deterioration of [her] emergency medical condition] is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(B). As used in this definition, the term "transfer" includes discharging a patient. 42 U.S.C. § 1395dd(e)(4). While not binding authority, the Center for Medicare & Medicaid Services ("CMS") State Operations Manual Interpretive Guidelines relating to EMTALA address the stabilization requirement. The Guidelines state that "[a]n individual will be deemed stabilized if the treating physician or [qualified medical personnel]

attending to the individual in the emergency department/hospital has determined, within reasonable clinical confidence, that the emergency medical condition has been resolved." Ctr. for Medicare & Medicaid Servs., State Operations Manual, Appendix V, Interpretive Guidelines, Responsibilities of Medicare Participating Hosps. in Emergency Cases, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107ap_v_emerg.pdf (last visited June 24, 2020).

At the *Daubert* hearing, Dr. White testified that when evaluating a patient's stability, she generally considers whether a patient could safely continue treatment at home and whether the appropriate treatment could be administered at home. In this specific case, she testified that she considered the assessment by A.H.'s medical providers, her oxygen levels, her vitals when presenting for treatment, her improved vitals after treatment, her medical history, and her ability to continue treatment at home. These factors are sufficiently similar to the statutory definition of "stabilized" under EMTALA such that Dr. White's opinion will be helpful to the trier of fact. Like EMTALA requires, Dr. White focused on the feasibility of safely continuing a patient's treatment at home and whether the emergent medical condition that led the patient to seek care was improved prior to discharge.

Further, accepting the CMS Interpretive Guidelines as persuasive authority, it is proper to judge stability by determining whether a treating physician deemed an individual to be stable within reasonable clinical confidence. As the Court has already concluded that Dr. White is a qualified expert in emergency medicine, it follows that her

opinion about A.H.'s medical treatment at WKMC would aid the trier of fact in determining whether A.H. was stabilized prior to discharge from the WKMC emergency department.

III. Conclusion

For the reasons stated herein, Plaintiffs' motion to disqualify Dr. White [Record Document 26] is **DENIED**. Dr. White will be allowed to testify as an expert in emergency medicine. The parties shall have until **July 10, 2020** to file any motions for summary judgment that were dependent on the outcome of this ruling.

**THUS DONE AND SIGNED** this 24th day of June, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE