UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **Akeem Henderson, et al.**<br>Plaintiffs;<br><br>v.<br><br>**Willis-Knighton Medical Center<br>d/b/a Willis-Knighton South Hospital**<br>Defendant. | Case No. 5:19-CV-00163<br><br>Judge Elizabeth E. Foote<br><br>Magistrate Judge Mark L. Hornsby |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................2

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE............................3

    BACKGROUND ...................................................................................................................3

    LAW AND ARGUMENT .....................................................................................................4

    1. Plaintiffs should be prohibited from introducing any evidence, testimony, argument, or suggestion that Willis-Knighton nurses, staff, health care providers or any other employee sexually assaulted A.H., or that hospital and SANE Nurse reports of suspected sexual assault were a "cover-up" for an EMTALA violation ......................... 4

    2. Plaintiffs should be prohibited from introducing any evidence of or making any reference to any inapplicable inpatient oxygen protocol, any oxygen protocol not in effect at the time of the treatment at issue, or A.H.'s oxygen saturation levels from prior admissions to Willis-Knighton facilities ................................................................. 6

    3. Any evidence or testimony that the Willis-Knighton medical records were improperly "altered" should be excluded at trial. ........................................................................... 10

    4. Defendant requests Plaintiffs be prohibited from introducing any evidence, argument, or testimony that A.H. did not receive a proper screening under the requirements of EMTALA. ................................................................................................................... 12

    5. Plaintiffs should not make any reference to, or introduce any evidence, testimony or argument regarding medical malpractice in this case. ................................................. 13

CONCLUSION ...................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**

- *Acadian Diagnostic Labs., L.L.C. v. Quality Toxicology, L.L.C.*,
  965 F.3d 404 (5th Cir. 2020) ....................................................................................7

- *Fewins v. Granbury Hosp. Corp.*,
  662 Fed.Appx. 327 (5th Cir. 2016)...........................................................................7

- *Marshall ex rel Marshall v. East Carroll Par. Hosp. Serv. Dist.*,
  134 F.3d 319, 322 (5th Cir. 1998) .....................................................................10, 13

- *Vickers v. Nash Gen. Hosp., Inc.*,
  78 F.3d 139 (4th Cir. 1996) ......................................................................................7

**Statutory Authorities**

- Emergency Medical Treatment and Labor Act ("EMTALA"),
  42 U.S.C.A. § 1395(dd) .......................................................................................3, 7

- Federal Rules of Evidence 401 ...........................................................................................7

- Federal Rules of Evidence 402 ...........................................................................................7

- Federal Rules of Evidence 403 .................................................................................5, 9, 12

- Federal Rules of Evidence 702 .........................................................................................12

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE**

NOW INTO COURT, through undersigned counsel, comes Willis-Knighton Medical Center d/b/a Willis-Knighton South ("Willis-Knighton") who respectfully moves this Honorable Court to issue an Order preventing Plaintiffs from introducing at trial: (1) any evidence, testimony, argument, or suggestion that any Willis-Knighton health care provider, nurse, staff, or other employee sexually assaulted A.H., and/or that the suspected sexual assault was a "cover up" for the alleged EMTALA violation, or the suggestion that a balloon catheter was used to cause the perception of swelling to "cover up" the alleged EMTALA violation; (2) any evidence or reference to any alleged oxygen protocol in existence on February 10, 2018 for inpatients at Willis-Knighton South, and any evidence of A.H. oxygen saturation levels from prior admissions to Willis-Knighton facilities; (3) any evidence, testimony, argument, or suggestion that the Willis-Knighton medical records pertaining to A.H. were inappropriately "altered;" (4) any evidence, testimony, or argument that the screening received by A.H. was not appropriate under EMTALA; and (5) any evidence, testimony, argument, or reference to medical malpractice at any time.

**BACKGROUND**

This action arises out of medical treatment provided to A.H., a minor child, in the Emergency Department at Willis-Knighton South & Center for Women's Health ("Willis-Knighton South") on February 10, 2018. Plaintiffs filed a Complaint naming Willis-Knighton as a defendant on February 11, 2019, alleging claims under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C.A. § 1395(dd). (Doc. 1).

The only issue for trial is whether Willis-Knighton engaged in "patient dumping" with respect to the discharge of A.H. from the Willis-Knighton South emergency department on February 10, 2018.

## LAW AND ARGUMENT

**1.     Plaintiffs should be prohibited from introducing any evidence, testimony, argument, or suggestion that Willis-Knighton nurses, staff, health care providers or any other employee sexually assaulted A.H., or that hospital and SANE Nurse reports of suspected sexual assault were a "cover-up" for an EMTALA violation.**

A.H. was treated in the Willis-Knighton South Emergency Department in the early morning hours of February 10, 2018 for respiratory complaints. After she was treated and stabilized, she was discharged to home. Upon information and belief, A.H. was taken to her grandmother's house, where she reportedly went to sleep for a few hours and then coded later that morning. A.H. was then transported to Willis-Knighton Bossier, where she was examined in the emergency room, and then ultimately transferred to Willis-Knighton South.

It was during the second hospital visit on February 10, 2018, that A.H. was examined by a Sexual Assault Nurse Examiner ("SANE Nurse") due to nursing staff suspecting possible sexual abuse after physical examination of the patient. The incident was suspected to have occurred prior to the child's arrival to the ER from her grandmother's house.

Plaintiffs apparently intend to argue at trial that the trauma was either caused by a Willis-Knighton health care provider, caused by catheter insertion, and/or was invented as a "cover-up" for the alleged EMTALA violation. For instance, Plaintiffs stated in their opposition to Defendant's Motion for Summary Judgment: "Records prove trauma to the child's vagina, occurring days apart, was most likely caused by hospital personnel" and that the medical records and SANE report allegedly "prove Willis-Knighton's report of suspected aggravated rape is nothing more than an abhorrent attempt to silence plaintiffs and cover-up its EMTALA violation." (Doc. 50, p. 11). **Defendant respectfully requests Plaintiffs be barred from arguing, introducing, or indirectly referencing this unfounded conspiracy theory at trial.**

Defendant submits that the evidence of suspected sexual assault, which is documented in the medical records, a police report, and the SANE report, may be relevant in terms of causation of the child's respiratory distress prior to her second hospital visit on February 10, 2018. However, Defendant seeks the exclusion of Plaintiffs' attempt to either accuse Willis-Knighton personnel of sexually abusing the patient, or orchestrating a cover up the alleged EMTALA violation, as such evidence, testimony, or argument does not assist the trier of fact in deciding the only issue in this case: whether the patient was stable prior to discharge from Willis-Knighton South on February 10, 2018 pursuant to the requirements of EMTALA.

Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. Plaintiff's conspiracy theory is highly prejudicial to Defendant, as it accuses individuals working in the hospital of a crime and is completely unsubstantiated by the record. The danger of the jury developing unfair and unwarranted prejudice towards the Defendant is far greater than any probative value of such evidence. Such allegations are also beyond the scope of the pleadings, which are limited to a narrow issue under EMTALA. The evidence would further confuse the issues and mislead the jury away from the issues to be determined with respect to Plaintiffs' EMTALA claim.

Defendant prays its Motion in Limine be granted, and that Plaintiffs be prohibited from introducing any evidence, testimony, argument, reference, or suggestion that any Willis-Knighton health care provider, nurse, staff, or other employee sexually assaulted A.H., and/or that the suspected sexual assault was a "cover up" for the alleged EMTALA violation.

**2. Plaintiffs should be prohibited from introducing any evidence of or making any reference to any inapplicable inpatient oxygen protocol, any oxygen protocol not in effect at the time of the treatment at issue, or A.H.'s oxygen saturation levels from prior admissions to Willis-Knighton facilities.**

Willis-Knighton anticipates that Plaintiffs will attempt to introduce evidence of an oxygen protocol ("Oxygen Protocol A") that Plaintiffs' counsel obtained from an unrelated case that was litigated by Plaintiffs' counsel prior to A.H.'s treatment at Willis-Knighton South on February 10, 2018.[1] Counsel for Willis-Knighton also reasonably anticipates that Plaintiffs will attempt to introduce evidence of a separate inapplicable oxygen protocol ("Oxygen Protocol B") that counsel for Willis-Knighton submitted in response to a discovery request from the Plaintiffs.[2] Finally, counsel for Willis-Knighton reasonably anticipates that Plaintiffs will attempt to introduce evidence of A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility. It is also anticipated that counsel for Plaintiffs will attempt to elicit testimony at trial from witnesses regarding the outdated and inapplicable Oxygen Protocol A, the inapplicable Oxygen Protocol B and evidence regarding A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility. The Court should prohibit the Plaintiffs from introducing into evidence or referencing at trial Oxygen Protocol A or Oxygen Protocol B, and any evidence regarding A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility on the grounds that they are all entirely irrelevant and will mislead and confuse the jury under Federal Rules of Evidence 402 and 403.

The Plaintiffs should not be allowed to introduce Oxygen Protocol A and Oxygen Protocol B into evidence as **neither protocol is utilized in the Willis-Knighton South Emergency**

---

[1] A copy of Oxygen Protocol A, which is sought to be used by Plaintiffs' counsel, is attached hereto as Exhibit "A".
[2] A copy of Oxygen Protocol B, which is sought to be used by Plaintiffs' counsel, is attached hereto as Exhibit "B".

**Department**, and this case concerns only the February 10, 2018 Willis-Knighton South Emergency Department treatment. Federal Rules of Evidence 402 provides that irrelevant evidence is not admissible. FRE 402. To be relevant, evidence must have a tendency to make a fact more or less probable, and that fact must be "of consequence in determining the action." *Acadian Diagnostic Labs., L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 412 (5th Cir.2020); *see also* FRE 401.  EMTALA does not apply to claims for inpatients. 42 U.S.C.A. § 1395dd. "EMTALA does not apply unless patients who are perceived to have the same medical condition receive disparate treatment [from other similarly situated patients]." *Fewins v. Granbury Hosp. Corp.,* 662 Fed.Appx. 327, 333 (5th Cir. 2016); see also *Vickers v. Nash Gen. Hosp., Inc*., 78 F.3d 139, 144 (4th Cir. 1996).

In the instant case, Plaintiffs produced Oxygen Protocol A at the November 26, 2019 deposition of Richard M. Sobel, M.D.  Oxygen Protocol A was procured by counsel for the Plaintiffs in a separate and unrelated lawsuit that took place prior to A.H.'s February 10, 2018 Willis-Knighton South Emergency Department treatment. Oxygen Protocol A was only applicable to patients who were admitted to the hospital ("inpatients") during the time the protocol was applicable.[3]  Oxygen Protocol A is not applicable to A.H.'s emergency room treatment on February 10, 2018.  Furthermore, inpatient protocols never apply to <u>emergency room patients, as such individuals are not inpatients</u>.  Plaintiffs' expert Richard M. Sobel, M.D. confirmed that Oxygen Protocol A was not designated for emergency room use at his deposition.

> Q: Did you see that this is actually a protocol for inpatients, not the emergency room?
> A: Yes…

---

[3] The protocol Plaintiffs' counsel seeks to introduce and obtain testimony was replaced by another oxygen inpatient protocol prior to February of 2018.  However, even the newer protocol would not be applicable to this case as it also applies only to inpatients and not to emergency room patients.

> Q:  So it's not a protocol for the ER?
>
> A:  No…[4]

*Exhibit C, Excerpts from Deposition of Dr. Sobel, pg. 87.*

The Court should also exclude Oxygen Protocol B as irrelevant under Federal Rules of Evidence 402. Counsel for the Plaintiffs propounded initial discovery requests on or about October 17, 2019. Request for Production No.1(a) stated in pertinent part as follows:

> **REQUEST FOR PRODUCTION NO.1:** Please produce any and all documents…policies…and protocols which were in effect at the time of A.H.'s discharge and which refer or relate to in any manner or to any extent, to the following subject matters: (a) administration of oxygen to a pediatric patient and/or the reassessment of that patient prior to discharge…

Undersigned counsel for Willis-Knighton read this request broadly and produced a copy of the Willis-Knighton Oxygen Protocol that was utilized **only for inpatients** at Willis-Knighton in February of 2018. Undersigned counsel for Willis-Knighton notified both the Court and counsel for the Plaintiffs at the May 27, 2020 Daubert Hearing that the Willis-Knighton Oxygen Protocol it produced was for inpatient stays only, and was not in use by the Willis-Knighton South Emergency Department. The Court asked counsel for Willis-Knighton to supplement its discovery responses to reflect that fact. Willis-Knighton supplemented its discovery responses on June 3, 2020 to clarify that there were no oxygen protocols for Willis-Knighton South Emergency Department patients during A.H.'s February 10, 2018, treatment at the Willis-Knighton South Emergency Department.[5] Thus, as both Oxygen Protocol A and Oxygen Protocol B are wholly irrelevant as they are used for <u>inpatients only</u>, they cannot be used to determine whether A.H.

---

[4] Exhibit "C", Excerpts from Deposition of Dr. Sobel, pg. 87.
[5] A copy of Willis-Knighton's June 3, 2020, supplemental discovery response is attached hereto as Exhibit "D".

received disparate treatment as compared to other Willis-Knighton South Emergency Department patients.

The Court should exclude any evidence of A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility, and any reference thereto at trial. Willis-Knighton submits that any evidence related to A.H.'s oxygen saturation levels taken while A.H. was previously an inpatient are wholly irrelevant as to whether A.H. received disparate treatment as compared to other Willis-Knighton South Emergency Department patients during A.H.'s February 10, 2018, treatment at the Willis-Knighton South Emergency Department.

Oxygen Protocol A, Oxygen Protocol B, and any evidence of A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility should also be excluded under Federal Rules of Evidence 403, as their admission into evidence will confuse the issues being tried, and will mislead the jury into thinking that this is a medical malpractice lawsuit. Federal Rules of Evidence 403 allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.

In the case at hand, the issue being tried is whether Willis-Knighton failed to stabilize A.H. prior to her discharge under EMTALA, and had actual knowledge that she was not stable at that time. The danger of confusing the jury by admitting Oxygen Protocol A, Oxygen Protocol B and/or any evidence of A.H.'s oxygen saturation levels on prior hospital admissions is far greater than any probative value of such evidence. Both Oxygen Protocol A and Oxygen Protocol B are for inpatients only. Emergency room patients are not inpatients. A jury might infer that because

9

Oxygen Protocol A and Oxygen Protocol B state that minor inpatients at Willis-Knighton South are to receive oxygen until they can maintain oxygen saturation at 95%, that policy should have applied to patients in the Willis-Knighton South Emergency Department. The jury might infer that A.H.'s oxygen saturation should be similar or greater to the baselines established for inpatients, which is not the correct legal issue in this case. Any comparison to policies applied to Willis-Knighton inpatients is wholly irrelevant and has nothing to do with EMTALA. Thus, this Court should exclude Oxygen Protocol A and Oxygen Protocol B as the jury could easily be confused into thinking that Oxygen Protocol A and Oxygen Protocol B apply to the treatment of Willis-Knighton South Emergency Department patients.

Furthermore, the admission of A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility into evidence can also confuse the jury into thinking that this is a medical malpractice case. A.H.'s oxygen saturation levels that were taken on prior occasions where A.H. was actually admitted to a Willis-Knighton facility might under certain circumstances be relevant to a medical malpractice negligence action, but the Plaintiffs have specifically stated that they are not bringing a medical malpractice negligence action in their Complaint. Allowing such evidence might confuse the jury into believing that this case is a medical malpractice negligence action. EMTALA is not a federal medical malpractice statute and does not create an avenue of recovery for medical negligence claims. *Marshall ex rel Marshall v. East Carroll Par. Hosp. Serv. Dist.,* 134 F.3d 319, 322 (5th Cir. 1998).

**3.     Any evidence or testimony that the Willis-Knighton medical records were improperly "altered" should be excluded at trial.**

Plaintiffs have repeatedly represented that, as part of a conspiracy to cover up the alleged EMTALA violation, the medical records in Willis-Knighton's possession were inappropriately

"altered" and those initially in Plaintiffs' possession are "unaltered." (See Doc. 22, Doc. 25). Copies of each set of Willis-Knighton records obtained by the parties have been exchanged. The alleged "alteration" of the record has not been established by any facts in the record. In fact, Defendant voluntarily provided an audit trail to Plaintiffs in an attempt to clarify that the records were not changed or altered as alleged. Defendants further attempted to re-open fact discovery after the expiration of same in order to further addresses Plaintiffs' concerns.

At the deposition of Plaintiffs' expert Dr. Richard Sobel, the "alterations" referred to by Plaintiffs apparently consisted only of the "Corrections" section of the Willis-Knighton emergency room record. Corrections, which commonly appear in electronic medical records, do not support any argument Willis-Knighton improperly "altered" the records as Plaintiffs suggest. The affidavit of nurse Susan Rainer, which was submitted with Defendant's Motion for Summary Judgment, further explained the "Corrections" section. (Doc. 52-1, p. 3-4).

Evidence or testimony, including that of Dr. Sobel, that the Willis-Knighton medical records were altered or changed for some improper reason are not relevant to the issues in this case. Evidence is relevant if it has any tendency to make a fact more or less probably than it would be without the evidence, and the fact is of consequence in determining the action. FRE 401. Plaintiffs fabricated an issue with the medical records that does not have any bearing on whether EMTALA was violated. The trial will only involve the issue of whether Willis-Knighton "dumped" A.H. under the meaning of EMTALA, and specifically whether the medical treatment satisfied the stabilization requirements set forth by EMTALA. Plaintiffs unsubstantiated and ambiguous argument that the medical records were "altered" as part of some conspiracy does not tend to prove any fact in this case.

11

To the extent the Court finds such evidence relevant, any probative value of the evidence or testimony is outweighed by prejudice to the Defendant and would lead to jury confusion in accordance with FRE 403. Such evidence would also not assist the trier of fact in determining whether EMTALA was violated pursuant to FRE 702.

**4. Defendant requests Plaintiffs be prohibited from introducing any evidence, argument, or testimony that A.H. did not receive a proper screening under the requirements of EMTALA.**

Plaintiffs Complaint affirmatively alleges that the screening provided to A.H. upon her initial presentation to the Willis-Knighton South Emergency Department on February 10, 2018 was proper, as follows:

> 8.
>
> Willis-Knighton South Hospital provided A. H. with an appropriate medical screening and detected an emergency medical condition in the four (4) year old child struggling to breathe.

(Doc. 1, p. 3).

Thereafter, Dr. Richard Sobel, plaintiff's expert witness, provided a report containing his opinions regarding the medical care provided to A.H., which included several statements that A.H. was not properly screened. Dr. Sobel offered similar opinions during his deposition. *Exhibit E, Dr. Sobel's Report, pgs. 3-4, 7-9; Exhibit C, Excerpts from Deposition of Dr. Richard Sobel, pg. 179.*

At the hearing on the parties' *Daubert* motions, the Court noted Dr. Sobel's testimony conflicted with this admission, and ruled that this issue would be deferred for discussion at the pretrial conference. (Doc. 54, p. 3). Out of an abundance of caution, Defendant raises this issue again herein to avoid waiving any argument.

There has been no evidence to establish that the screening was improper other than Dr. Sobel's report, which directly conflicts with the Plaintiffs' Complaint. Defendant admits that A.H.

had an emergency medical condition when she first presented to the Willis-Knighton South Emergency Department on February 10, 2018. Plaintiffs did not attempt to amend the Complaint in accordance with the Court's Scheduling Order following the production of Dr. Sobel's report. Plaintiffs have therefore waived the right to present any evidence or testimony that the screening was improper at trial.

Defendant therefore requests Dr. Sobel's report be stricken to redact any portions criticizing the screening of the patient prior to being introduced into evidence. *Exhibit E*. Plaintiff has affirmatively plead that the screening was proper, and therefore has waived any right to now argue the screening was improper at trial. Dr. Sobel's opinion goes beyond the scope of the allegations set forth in Plaintiffs' Complaint.

It is undisputed that the patient was suffering from an emergency medical condition at the time she presented to Willis-Knighton Emergency Department on February 10, 2020. Plaintiffs have conceded and even affirmatively alleged that the screening received by A.H. was appropriate under the definition of EMTALA. Therefore, Plaintiffs should be precluded from introducing any evidence, testimony, or argument that Willis-Knighton did not adequately screen the patient under the requirements of EMTALA.

**5. Plaintiffs should not make any reference to, or introduce any evidence, testimony or argument regarding medical malpractice in this case.**

EMTALA is not a federal medical malpractice statute. *Marshall,* 134 F.3d 319, 322. Any mention of medical malpractice is not relevant to Plaintiffs' EMTALA claim and will not have any tendency to make the existence of any fact of consequence to the determination of the action more or less probable. FRE 401. Plaintiffs did not allege medical malpractice in their Complaint and should be barred from introducing any evidence of same as it is beyond the scope of the

pleadings and issues for trial. The only issue for trial is whether the patient was "dumped" under the meaning of EMTALA due to a failure to stabilize before discharge.

## CONCLUSION

For these reasons, Willis-Knighton Medical Center prays its Motion in Limine be granted, and Plaintiffs be prohibited from introducing at trial: (1) any evidence, testimony, argument, or suggestion that any Willis-Knighton health care provider, nurse, staff, or other employee sexually assaulted A.H., and/or that the suspected sexual assault was a "cover up" for the alleged EMTALA violation, or the suggestion that a balloon catheter was used to cause the perception of swelling to "cover up" the alleged EMTALA violation; (2) any evidence or reference to any alleged oxygen protocol in existence on February 10, 2018 for inpatients at Willis-Knighton South, and any evidence of A.H. oxygen saturation levels from prior admissions to Willis-Knighton facilities; (3) any evidence, testimony, argument, or suggestion that the Willis-Knighton medical records pertaining to A.H. were inappropriately "altered;" (4) any evidence, testimony, or argument that the screening received by A.H. was not appropriate under EMTALA; and (5) any evidence, testimony, argument, or reference to medical malpractice at any time.

RESPECTFULLY SUBMITTED,

*/s/ Lamar P. Pugh*
**Lamar P. Pugh**
Louisiana Bar Roll Number. 20070
**Robert G. Pugh, III**
Louisiana Bar Roll Number 36631
**PUGH, PUGH & PUGH L.L.P.**
333 Texas Street, Suite 2100
Shreveport, Louisiana 71101
Telephone: 318-227-2270
Telecopier: 318-227-2273
lamar@thepughlawfirm.com

*[Continued on next page]*

*/s/ Shelby L. Giddings*
**Robert W. Robison, Jr.**
Louisiana Bar Roll Number 24630
**Shelby L. Giddings**
Louisiana Bar Roll Number 38232
**WATSON, BLANCHE, WILSON & POSNER, LLP**
505 North Boulevard
Baton Rouge, Louisiana 70821
Telephone: 225-387-5511
Fax: 225-387-5972
rrobison@wbwplaw.com
*Attorneys for Defendant Willis-Knighton Medical Center d/b/a Willis-Knighton South*

### CERTIFICATE OF SERVICE

The foregoing has been provided to opposing counsel electronically via the CM/ECF/PACER system, on this 25th day of August, 2020.

*Shelby L. Giddings*
Shelby L. Giddings